PEOPLE v THEW

Docket No. 145357. Submitted September 24, 1992, at Lansing. De-
cided August 2, 1993, at 9:35 A.M.

John W. Thew offered in the Gogebic Circuit Court, Roy D.
Gotham, J., pleas of guilty of first-degree murder and felony
murder in connection with the death of an eleven-year-old girl.
The court, finding a factual basis only for a killing connected to
first-degree criminal sexual conduct, accepted the plea of guilty
of felony murder and rejected the plea of guilty of first-degree
murder. The defendant moved to withdraw the plea before
sentencing. The court denied the motion and sentenced the
defendant to life imprisonment without parole. The defendant
appealed.

The Court of Appeals *held:*

1. There is no merit to the claim that the defendant did not
understand the consequences of pleading guilty. The trial court
adequately advised the defendant that the crimes of which he
pleaded guilty carried mandatory sentences of life imprison-
ment without parole. The record does not support the defen-
dant's contention that he pleaded guilty because he believed
that the only way he could receive the psychiatric treatment he
desired was by pleading guilty. The defendant's solitary confine-
ment in the county jail did not coerce him into pleading guilty.

2. A sufficient factual basis exists to support a plea of guilty
of felony murder. A homicide qualifies as a felony murder
where it is committed to prevent detection of the felony. In this
case, the defendant's admissions at the plea hearing lead to an
inculpatory inference that he killed the victim to prevent
detection of the criminal sexual conduct.

3. The defendant's claim that, in the interest of justice, he
must be allowed to withdraw his plea on the basis of ineffective
assistance of trial counsel requires that the case be remanded.
The trial court must supplement the record with respect to
whether the defendant's guilty plea was made involuntarily

REFERENCES

Am Jur 2d, Criminal Law §§ 474, 985; Homicide §§ 71-87.
Adequacy of defense counsel's representation of criminal client
regarding guilty pleas. 10 ALR4th 8.

and without understanding because of any failure by trial counsel to explain to the defendant the nature of the charges against him, the consequences of a guilty plea, the possible defenses to the charged offenses, the strength of the prosecution's evidence, and the applicability of lesser included offenses.

Remanded.

1. HOMICIDE — FELONY MURDER.

Felony murder consists of the killing of a human being with the intent to kill, to do great bodily harm, or to create a high risk of death or bodily harm with knowledge that death or great bodily harm was the probable result while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in MCL 750.316; MSA 28.548.

2. HOMICIDE — FELONY MURDER — CONTINUOUS TRANSACTION.

A murder committed while attempting to escape from or prevent detection of a felony is felony murder, but only if committed as part of a continuous transaction with, or is otherwise immediately connected with, the underlying felony.

3. CRIMINAL LAW — GUILTY PLEAS — INEFFECTIVE ASSISTANCE OF COUNSEL.

A claim of ineffective assistance of counsel in the context of a guilty plea requires a determination whether the plea was tendered voluntarily and understandingly by the defendant after sufficient advice from counsel regarding the nature of the charges, possible defenses, the consequences of pleading guilty, and the applicability of lesser included offenses.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Nicholas J. Jacobs,* Prosecuting Attorney, and *William E. Molner,* Assistant Attorney General, for the people.

*Lori, Jaspen & Stopczynski, P.C.* (by *Kenneth M. Stopczynski*), for the defendant on appeal.

Before: MICHAEL J. KELLY, P.J., and SHEPHERD and FITZGERALD, JJ.

SHEPHERD, J. Defendant appeals as of right from a September 4, 1991, decision of the trial court

denying his motion to withdraw his guilty plea to the charge of first-degree felony murder, MCL 750.316; MSA 28.548. We remand.

I

Defendant was charged with one count of first-degree murder, MCL 750.316; MSA 28.548, and one count of first-degree felony murder, MCL 750.316; MSA 28.548, for killing an eleven-year-old girl who died as a result of being run over and dragged underneath defendant's automobile in Gogebic County on February 15 or 16, 1991. After waiving his preliminary examination, defendant entered pleas of not guilty at the arraignment on April 2, 1991. On June 25, 1991, defendant offered to plead guilty to the charges without the benefit of a plea agreement. At the plea hearing, the trial court found a sufficient factual basis to accept defendant's plea of guilty of first-degree felony murder, but not first-degree murder. This finding was based upon defendant's admissions that he killed the victim while committing first-degree criminal sexual conduct. MCL 750.520b(1)(a); MSA 28.788(2)(1)(a) [victim under thirteen years of age].

Subsequently, on July 25, 1991, the trial court granted defense counsel's motion to withdraw as counsel for defendant. On August 26, 1991, defendant filed a motion to withdraw his plea of guilty, which the court denied on September 4, 1991. On September 26, 1991, defendant was sentenced to the mandatory term of life imprisonment without parole.

II

MCR 6.310(B) states the standard of review that governs motions to withdraw guilty pleas:

Withdrawal Before Sentence. On the defendant's motion or with the defendant's consent, the court in the interest of justice may permit an accepted plea to be withdrawn before sentence is imposed unless withdrawal of the plea would substantially prejudice the prosecutor because of reliance on the plea. If the defendant's motion is based on an error in the plea proceeding, the court must permit the defendant to withdraw the plea if it would be required by MCR 6.311(B).

In *People v Spencer,* 192 Mich App 146, 150; 480 NW2d 308 (1991), this Court stated:

Under MCR 6.310, the use of the term "may" denotes that the trial court has discretion to allow the withdrawal of the plea before sentencing if withdrawal is in the interest of justice and the withdrawal does not substantially prejudice the prosecutor because of reliance on the plea.

This Court, interpreting the phrase "in the interest of justice" in light of the discussion contained in 3 ABA Standards for Criminal Justice (2d ed), Standard 14-2.1(a), further remarked:

Accordingly, in order to withdraw a guilty plea before sentencing, the defendant must first establish that withdrawal of the plea is supported by reasons based on the interests of justice. If sufficient reasons are provided, the burden then shifts to the prosecution to demonstrate substantial prejudice. To constitute substantial prejudice, the prosecution must show that its ability to prosecute is somehow hampered by the delay. This would appear to require more than mere inconvenience in preparing for trial. Ultimately, the trial judge should bear in mind what is in the interests of justice in deciding if a plea may be withdrawn. Accordingly, what constitutes substantial prejudice may vary from case to case. [192 Mich App 151.]

III

MCR 6.302 provides that a trial court may not accept a plea of guilty unless it is convinced that the plea is understanding, voluntary, and accurate. In *In re Valle*, 364 Mich 471, 477; 110 NW2d 673 (1961), the Supreme Court stated:

> In order to be accepted, a plea of guilty in a criminal case must be entirely voluntary by one competent to know the consequences, and should not be induced by fear, misapprehension, persuasion, promises, inadvertence or ignorance.

Defendant first argues that his guilty plea was not understandingly given because the trial court failed to advise him that the crimes of which he was pleading guilty carried mandatory sentences of life imprisonment without parole. We disagree.

During the plea-taking process, the following colloquy occurred:

> [*The Court*]: As to either of these charges the penalty is life imprisonment without parole. The sentencing judge, if you were convicted of either of these charges, has no discretion whatever but to sentence you to life in prison without parole. Do you understand that, sir?
> [*The Defendant*]: Yes.

Despite the fact that defendant has only a seventh-grade education and claims that he suffers from serious psychiatric problems, the record shows that he understood that he would be sentenced to life imprisonment without parole if the trial court accepted his plea of guilty of first-degree felony murder.

Furthermore, there is no basis to defendant's assertion that he understood that he had to enter

a plea of guilty in order to receive psychiatric treatment. Although defendant now claims that he pleaded guilty in order to receive such treatment, the record shows otherwise:

> [*The Court*]: . . . Now, has anybody promised you in any way or hinted to you in any that things would go easy with you; that you wouldn't get the penalty prescribed by law if you offered a plea of guilty at this time?
> [*The Defendant*]: No, they haven't.
>
> *   *   *
>
> [*The Court*]: Is it your intention to appear before this Court today and offer a plea of guilty to first degree murder of your own free choice; of your choice alone?
> [*The Defendant*]: Yes.
> [*The Court*]: Why do you wish to offer a plea of guilty to this crime, Mr. Thew? You stated it's of your choice.
> [*The Defendant*]: Because I did it and it's wrong and I should be punished for it.

Defendant further stated that he had discussed with his lawyer on several occasions his intention to offer a guilty plea and that he had been considering pleading guilty "for the last month." On the basis of defendant's statements, the trial court concluded that "he is pleading guilty of his own free choice in this case; without threat, without promise, his own volitional act after careful consideration over a period of time."

Nor is there any basis to defendant's claim that his plea was coerced because he was isolated from the general population in the Gogebic County Jail and placed in a special detoxification cell from February 17, 1991, until June 25, 1991. In *People v Smith,* 182 Mich App 436, 442; 453 NW2d 257 (1990), this Court reiterated the well-established

rule that detention itself has never been recognized as so inherently coercive that it will render a guilty plea invalid.

Moreover, while defendant was segregated from the general population and placed in a detoxification cell because the sheriff of Gogebic County learned that some inmates at the jail had made threats against defendant, the record shows that he received basically the same treatment and had the same privileges as the other inmates. Further, defendant made no complaints to the sheriff regarding the conditions at the jail during his confinement. As the trial court found in ruling on the motion to withdraw the plea of guilty:

> I do not believe that his environment at the Gogebic County Jail was such as to coerce him to offer a plea of guilty, the consequence of which would require him to be incarcerated for the rest of his life. Although, those conditions at the Gogebic County Jail in the detox cell are obviously less than desirable to any of us, Mr. Thew's decision to plead guilty in this case was based upon a great deal of soul searching over a long period of time with advice of counsel and the visitation by counsel on numerous occasions.
>
> The Court is convinced that his plea of guilty on June 25, and the Court's acceptance of his plea on that date was valid. It appears only now that he has changed his mind since.

IV

Although defendant did not raise it as an issue, we further note that a sufficient factual basis exists to support his plea of guilty of felony murder.[1]

[1] The issue was added pursuant to our order dated December 18, 1992.

In *People v Jones,* 190 Mich App 509, 511-512;
476 NW2d 646 (1991), this Court observed:

> A factual basis to support a plea exists if an
> inculpatory inference can be drawn from what the
> defendant has admitted. *Guilty Plea Cases,* 395
> Mich 96, 128-132; 235 NW2d 132 (1975). This holds
> true even if an exculpatory inference could also be
> drawn and the defendant asserts that the latter is
> the correct inference. *Id.,* p 130. Even if the defen-
> dant denies an element of the crime, the court
> may properly accept the plea if an inculpatory
> inference can still be drawn from what the defen-
> dant says. *People v Haack,* 396 Mich 367, 374-375;
> 240 NW2d 704 (1976).

> Felony murder consists of

> (1) [t]he killing of a human being (2) with the
> intent to kill, to do great bodily harm, or to create
> a high risk of death or great bodily harm with
> knowledge that death or great bodily harm was
> the probable result (3) *while committing, attempt-
> ing to commit, or assisting in the commission* of
> any of the felonies specifically enumerated in MCL
> 750.316; MSA 28.548. [Emphasis added. *People v
> Bush,* 187 Mich App 316, 327; 466 NW2d 736
> (1991).]

Criminal sexual conduct in the first and third
degree are felonies specifically enumerated in MCL
750.316; MSA 28.548.

In applying the felony-murder rule, this Court in
*People v Smith,* 55 Mich App 184, 189; 222 NW2d
172 (1974), stated:

> [I]f a murder is committed while attempting to
> escape from or prevent detection of the felony, it is
> felony murder, but only if it is committed as a
> part of a continuous transaction with, or is other-

wise "immediately connected" with, the underlying felony.

Subsequent panels of this Court have held that it is not necessary that the murder be contemporaneous with the enumerated felony. *People v Brannon,* 194 Mich App 121, 125; 486 NW2d 83 (1992). In *People v Goddard,* 135 Mich App 128, 135-136; 352 NW2d 367 (1984), rev'd on other grounds 429 Mich 505; 418 NW2d 881 (1988), this Court stated:

> Michigan courts have held that a homicide qualifies as a felony murder if it is committed while a defendant is attempting to escape from or prevent detection of the felony and if it is immediately connected with the underlying felony. *People v Podolski,* 332 Mich 508, 518; 52 NW2d 201 (1982); *People v Smith,* 55 Mich App 184, 189; 222 NW2d 172 (1974). . . .
> This position has been adopted in other jurisdictions. Although the language of other felony-murder statutes varies widely, most require that the killing be in the "commission/perpetration" or attempt to "commit/perpetrate" the underlying felony. LaFave & Scott, Criminal Law, § 71, p 555. Where a causal connection between the killing and the underlying felony exists, courts generally have held that a killing may take place sometime before or after, as distinguished from during, the felony and yet still qualify as a killing "in the commission or attempted commission of" the felony. La-Fave & Scott, *supra,* p 555. Courts have usually required that the killing and the underlying felony be "closely connected in point of time, place and causal relation." *State v Adams,* 399 Mo 926; 98 SW2d 632 (1936). The required relationship between the homicide and the underlying felony has been summarized as being "whether there is a sufficient causal connection between the felony and the homicide depends on whether the defendant's felony dictated his conduct which led to the homicide." LaFave & Scott, *supra,* p 557.

We hold that, to qualify as felony murder, the homicide must be incident to the felony and associated with it as one of its hazards. It is not necessary that the murder be contemporaneous with the felony. A lapse of time and distance are factors to be considered, but are not determinative. [Citations omitted.]

In the instant case, an examination of the relevant portions of the plea transcript reveals that there was a sufficient factual basis to support the trial court's acceptance of defendant's plea of guilty of felony murder based upon inculpatory inferences that may be drawn from what defendant admitted.

According to defendant's testimony at the plea hearing, defendant and the victim engaged in sexual intercourse about fifteen to twenty minutes before defendant killed the victim by running her down with his car. Although defendant claims that the sexual intercourse was consensual, he knew that the victim was only eleven years old. Immediately thereafter, an argument ensued between them about the allegedly false testimony that the victim and the victim's brother had given in a rape case against someone else. Defendant stated that the victim became "hyper" and "pissed off," slapping, kicking, and beating his car. Defendant then got into his car and took off, intentionally running into the victim, who was standing in front of the car. After he struck the victim, she became stuck under the car, and he had to rock the car back and forth several times to get his car free of her. Although defendant got out of the car once and saw that the victim was injured, he left the area and went to a local bar.

While there is no question that defendant admitted killing the victim and that he possessed at least the intent to do great bodily harm, there is a

question whether defendant murdered her while committing the underlying criminal sexual conduct offense, as required by the felony-murder rule. On the basis of defendant's testimony, we believe that inculpatory inferences can be drawn that he killed the victim to prevent detection of the act of sexual intercourse with her, and that the killing was "immediately connected" with the act of sexual intercourse.

At the plea hearing, the following exchange took place:

> [*The Court*]: Well, you intended to injure her; did you not when you struck her with the car?
> [*The Defendant*]: Yes.
> [*The Court*]: Did you have any concern, Mr. Thew, at that time that [the victim] would—would tell others, would squeal, would tell others that you and she had had sex there at that place and time?
> [*The Defendant*]: Yes.
> [*The Court*]: Did she threaten to tell during your argument?
> [*The Defendant*]: No.

Even though defendant stated that the victim did not say that she would tell others about their having had sexual relations, defendant admitted that one of his concerns, at the time he struck down the victim, was that she would tell others that he had had sexual relations with an eleven-year-old girl. Although approximately fifteen to twenty minutes transpired between the underlying felony and the murder, the trial court could have drawn the conclusion that the argument between defendant and the victim was part of a continuous transaction that resulted in her death.

v

Defendant also claims that he was denied the effective assistance of counsel because his counsel failed to investigate the facts surrounding the death of the victim and to have defendant examined to determine if he had an insanity defense or other defenses based upon mental defect, diminished capacity, or intoxication.

To prevail on a claim of ineffective assistance of counsel, defendant must first show that counsel's performance was deficient and that, under an objective standard of reasonableness, counsel made an error so serious that counsel was not functioning as an attorney as guaranteed under the Sixth Amendment of the United States Constitution. The defendant must overcome the presumption that the alleged deficient performance was sound trial strategy. Second, the alleged deficiency must be prejudicial to the defendant. *Strickland v Washington,* 446 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Tommolino,* 187 Mich App 14, 17; 466 NW2d 315 (1991); *People v Armendarez,* 188 Mich App 61, 74; 468 NW2d 893 (1991).

When reviewing a claim of ineffective assistance of counsel arising out of a guilty plea, courts apply the test set forth in *Strickland* in light of *McMann v Richardson,* 397 US 759; 90 S Ct 1441; 25 L Ed 2d 763 (1970), and *Tollett v Henderson,* 411 US 258; 93 S Ct 1602; 36 L Ed 2d 235 (1973). *In re Oakland Co Prosecutor,* 191 Mich App 113, 120-122; 477 NW2d 455 (1991). To establish ineffective assistance in the context of a guilty plea, courts must determine whether the defendant tendered a plea voluntarily and understandingly. *Id.,* p 120. The question is not whether a court would, in retrospect, consider counsel's advice to be right or wrong, but whether the advice was within the

range of competence demanded of attorneys in criminal cases. *Id.,* p 122. Where a defendant fails to move for a new trial or an evidentiary hearing regarding the issue of ineffective assistance of counsel, appellate review is limited to the present record. *People v Ginther,* 390 Mich 436, 443; 212 NW2d 922 (1973).

Although defendant failed to request a *Ginther* hearing, the issue of ineffective assistance of trial counsel was considered at the motion to withdraw the plea, where the trial court made the following findings of fact:

> On the matter of effective assistance of counsel at the plea proceeding on the 25th of June, the Court also inquired of Mr. Thew directly as to whether or not he had discussed these issues with his attorney, Mr. Stella; had gone over his rights with his attorney before coming to court. Mr. Thew in that regard advised the Court that he had been considering a plea of guilty for, I believe, if I recall correctly, over a month before we appeared in court on June 25, and that he had not on the spur of the moment but several days earlier ultimately and firmly decided in [sic] making a plea of guilty.
>
> His motive for the plea in his own words was, because I did it and it's wrong and I should be punished for it.
>
> Based upon the further record here today and the testimony of Attorney Stella, I am confident both because of Mr. Stella's expressed testimony here and also because he's known here as an experienced attorney in the criminal law, I am confident that he did consider the issues now raised by the defendant prior to the plea proceeding, and on the basis of his testimony, contrary to the defendant's affidavit, he discussed these issues such as diminished capacity, the nature and elements of an insanity or guilty but mentally ill and other possible defenses.

> I specifically find that Attorney Stella never advised the defendant that he would have to plead guilty before he would be able to assert any psychiatric defense.

Here, the record shows that defendant's counsel demonstrated competence with respect to the issues raised by defendant on appeal.

Nevertheless, guilty pleas have been found to be involuntary or unknowing on the basis of ineffective assistance of counsel where the defense counsel has failed to explain to his client the nature of the charges or to discuss possible defenses to the charges to which he is pleading guilty. Anno: *Adequacy of defense counsel's representation of criminal client regarding guilty pleas,* 10 ALR4th 8, §§ 25-26, pp 130-151.

In *Rinehart v Brewer,* 561 F2d 126 (CA 8, 1977), the Eighth Circuit Court of Appeals affirmed an order granting habeas corpus relief in a case where a teenager's plea of guilty of second-degree murder was involuntary because defense counsel's failure to explain adequately the nature of the charges and the consequences of the guilty plea as well as his failure to discuss the "the very real possibility" of a manslaughter defense supported a finding of ineffective assistance of counsel. In that case, the court noted:

> Rinehart was only 15 years old at the time he made the guilty plea and was somewhat immature for his age. Although he had at least average intelligence, he had no prior experience with the legal system and no other basis for understanding what was happening to him. In addition, Rinehart had difficulty in communicating with respect to the underlying events. His failure to fully grasp the situation is perhaps best illustrated by his requests as to whether he would be able to have a

car in jail. Under these circumstances, a particularly stringent duty is imposed upon both defense counsel and the trial court to make certain that the defendant understands the charges and the consequences of his plea. [*Id.,* p 130.]

Concluding that defense counsel rendered ineffective assistance of counsel, the court stated:

Regardless of whether defense counsel actually informed the defendant of the possibility of a life sentence for second-degree murder or of the possibility that manslaughter might be the appropriate outcome, they did not adequately follow up to ascertain whether the defendant and his parents fully understood those possibilities. Rinehart was materially prejudiced thereby because he was unable to make an intelligent and informed choice from among his alternative courses of action.

Second, defense counsel failed to grasp the very real possibility that Rinehart was guilty of only manslaughter, not second-degree murder. . . . However, defense counsel did not pursue the lesser-included charge of manslaughter and did not stress this possibility to Rinehart or his parents. Rinehart was obviously materially prejudiced because he was not informed of these possibilities before he entered his guilty plea. [*Id.,* p 132.]

In this case, there is no indication that defense counsel made certain that defendant understood the nature of the charges or the possible defenses that were available to him before he pleaded guilty of first-degree murder and felony murder. According to his affidavit, defendant states that he did not realize that he would remain in prison for the rest of his life until he met with Ms. Judy Hickman, his parole and probation officer, who interviewed him on June 28, 1991, three days after he entered the guilty plea, for the purpose of preparing a presentence investigation report. In

her affidavit, Ms. Hickman states that at the close of the presentence interview defendant asked whether she thought the judge would send him to prison or if he might be sent for mental health counseling. In his affidavit, defendant further states that while he was incarcerated in the Gogebic County Jail he advised his attorney that he had experienced blackouts and that he was in need of psychiatric treatment.

Under these circumstances, we agree with the *Rinehart* court's observation that defense counsel had a "particularly stringent duty" to ensure that defendant understood the nature of the charges and the consequences of his plea because this is a capital case where the offenses to which defendant was pleading guilty carry the mandatory minimum sentence of life imprisonment without parole —the maximum penalty under law in the State of Michigan. Given the gravity of defendant's plea of guilty to these charges, coupled with defendant's level of education and his apparent mental problems of which defense counsel was aware, defense counsel had a duty to make certain that defendant fully understood the nature of these charges and that a guilty plea carried a mandatory minimum sentence of life imprisonment without parole.

Moreover, there is no indication in the record that defense counsel discussed "the very real possibility," *id.*, p 132, of establishing defenses to the charged offenses. As it was, the trial court declined to accept defendant's plea of guilty of first-degree murder because his plea admissions did not provide a sufficient factual basis to establish that he killed the victim with premeditation and deliberation. If this case had gone to trial, there was also a "real possibility" that, absent defendant's self-incriminating plea testimony, the prosecution would not have been able to establish the elements of

felony murder. Even assuming that the prosecution established beyond a reasonable doubt that defendant had sexual relations with the underage victim and that he killed her with malice and without justification or excuse, it was still necessary to show beyond a reasonable doubt that the murder was part of a single, continuous transaction immediately following the criminal sexual conduct. Absent defendant's plea testimony, the prosecution's case for felony murder was not at all overwhelming. The prosecutor would have to prove by independent evidence that the assault on the victim with the automobile was related to the criminal sexual conduct. For the reasons stated, defendant had a very real possibility of prevailing on that issue.

Furthermore, there is no indication that defense counsel stressed the possibility to defendant that he could be guilty of various lesser included offenses, such as first-degree criminal sexual conduct, second-degree murder, manslaughter, or assault with a deadly weapon, but not of first-degree murder and felony murder. While defendant admitted that what he did was wrong and that he should be punished for it, he appears to have been unaware that he could only be punished for criminal offenses that the prosecution could establish beyond a reasonable doubt. Even if he wished to plead guilty because of a guilty conscience, it appears he was not made aware of the fact that he could go before a jury and be found guilty of a lesser offense and be punished accordingly, i.e., the record shows that defendant understood that he was faced with only the two options of pleading guilty to an offense that carried life without parole and going free. Although the record reveals that defense counsel reviewed the homicide statutes and researched the elements of second-degree murder, manslaughter,

and criminal sexual conduct in the first and third degree, and otherwise acted competently, the record does not show whether defense counsel explained to defendant the elements of the various offenses of which he could be guilty, the possible defenses to each of these charges, and the prosecution's evidence supporting each of them. In short, there is nothing in the record to suggest that defendant understood his full range of options before he entered his plea of guilty of first-degree murder and felony murder.

It has been well recognized that a guilty plea is the most serious step a defendant can take in a criminal prosecution. For that reason, the plea "not only must be voluntary but must be [a] knowing, intelligent ac[t] done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v United States,* 397 US 742, 747-748; 90 S Ct 1463; 25 L Ed 2d 747 (1970).

On the present record, there is a serious question whether defendant's guilty plea was the result of a sufficiently informed choice that constituted a voluntary and knowing act. The record does not show whether defense counsel rendered effective assistance of counsel by making certain that defendant was aware of the nature of the charges and the consequences of his guilty plea or of alternative courses of actions, including defenses available against the charged offenses to which he offered a plea, as well as any lesser included offenses.

VI

As previously stated, on a motion to withdraw a guilty plea before sentencing, a defendant must bring forth evidence that it is in the interest of justice to withdraw the plea and the burden then shifts to the prosecutor to show substantial prejudice. MCR 6.310(B); *Spencer, supra.*

In the instant case, the trial court denied defendant's motion because the court did not find that it was in the interest of justice. However, the court noted that the prosecutor failed to show substantial prejudice because there was only some prejudice in having to proceed with a trial. Although defendant claimed, and continues to claim, that he is innocent of felony murder, the trial court did not believe him. Here we note that the issue of innocence is whether defendant is innocent of the offense of which he pleaded guilty. In other words, the issue is not whether the trial court believes him but whether defendant has a valid defense to the charge of felony murder, even if he might be guilty of other offenses, such as second-degree murder and first-degree criminal sexual conduct.

On the existing record, we believe that there is a basis for defendant's claim of innocence of the specific offense to which he entered a plea of guilty insofar as there is a possible defense to the charge of felony murder. First, defendant's testimony at the plea hearing leaves open the question whether there was evidence beyond a reasonable doubt that he killed the victim, not because she would tell others, but because he was angry with her. In addition, there is also the question on the present record whether defense counsel rendered effective assistance of counsel by making certain that defendant was aware of the nature of the charges and by advising him of alternative courses of action, including possible defenses to the charged offenses as well as any lesser included offenses.

On the basis of the foregoing, we believe that it is necessary to remand this case for further proceedings to allow the trial court to supplement the record with regard to whether defendant has established that the withdrawal of his plea of guilty

of felony murder is "in the interest of justice." See the order in *People v Stewart,* 442 Mich 889; 498 NW2d 430 (1993), entered April 19, 1993, where the Supreme Court held that this Court erred in deciding on its own motion that the defendant received ineffective assistance of counsel in pleading guilty as charged without requiring a hearing to supplement the record. On remand, the trial court is instructed to make specific findings of fact regarding this matter in light of defendant's claim of innocence of felony murder, the possibility of a valid defense to the charge of felony murder, and the question of effective assistance of counsel regarding defendant's plea of guilty of felony murder. We do not wish to imply that counsel has the obligation to ensure that defendant fully understands the nature of the charges against him. It is enough if counsel makes defendant aware of, i.e., explains, the nature of the charges and the possible defenses. Counsel cannot possibly ensure comprehension.

Remanded for further proceedings consistent with this opinion. We retain jurisdiction.