*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

VELENTIN LARRY ROMERO,

Defendant-Appellant.

UNPUBLISHED
October 11, 2024
1:54 PM

No. 365941
Isabella Circuit Court
LC No. 2019-000512-FH

Before: RIORDAN, P.J., and YOUNG and WALLACE, JJ.

PER CURIAM.

Velentin Larry Romero appeals by delayed leave granted[1] the order denying his motion for relief from judgment. Romero pleaded no contest to first-degree home invasion ("home invasion"), MCL 750.110a(2), and assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84.[2] Romero was sentenced as a third-offense habitual offender, MCL 769.11, to 15 to 40 years' imprisonment for the first-degree home invasion conviction and 10 to 20 years' imprisonment for the AWIGBH conviction. After this Court denied Romero's initial delayed application for leave to appeal,[3] Romero moved for relief from judgment, which the trial court denied. It is from that denial Romero again appeals. We affirm.

---

[1] *People v Romero*, unpublished order of the Court of Appeals, entered December 1, 2023 (Docket No. 365941).

[2] Romero was charged with conspiracy to commit home invasion, MCL 750.157a; first-degree home invasion; conspiracy to commit AWIGBH, MCL 750.157a; and AWIGBH.

[3] This Court denied Romero's delayed application for leave to appeal in Docket No. 355772 on different grounds. *People v Romero*, unpublished order of the Court of Appeals, entered February 23, 2021 (Docket No. 355772).

## I. BACKGROUND

### A. FACTUAL CIRCUMSTANCES

To celebrate his 21st birthday, Jacob Barrasso had a party at his residence. At one point, he noticed at least 40 people were in attendance, many he did not know, some who were underage. He tried to clear people out and a fight started. Barrasso suffered injuries to his face and a large cut from a knife on the left side of his abdomen. The police were called, and they questioned several witnesses on the scene because Barrasso was transported to the hospital. Individuals stated they saw a fight break out, and later, saw a lot of blood. One person mentioned seeing a "large group of natives" enter the party. According to some partygoers, one person had a mace and was spraying it, one person had a bat they were swinging, and an "older male from the native family" had a knife. Multiple people shared they were struck by the bat or maced.

Later that night, a police officer interviewed Barrasso at the hospital. Barrasso recalled being struck in the head several times as he tried to clear people out of his residence. He was then confronted by someone he had "never seen in his life" and woke up on the ground bleeding. He only ever recalled seeing a bat and could not remember anything about being stabbed. He did know from Snapchat, a popular social media platform, that one of the two "natives" at his house went by "Valentino."

Barrasso was shown only one photo at the hospital by the police officer—a picture of Romero. Barrasso said that photo looked "similar" to the guy who confronted him at the party and of particular note was the "mutton chops" facial hair. Barrasso said he was a 9 out of 10 certain that the person pictured was the man who hit him in the face and he was 100 percent willing to testify to that.

Later that same evening, the police received a call from a partygoer stating she believed Romero stabbed Barrasso. In the days following the party and the fight, police obtained a video of the fight taken on a cell phone and shared on Snapchat. Two additional party-goers, who had attended school with Romero, were interviewed and identified Romero as being present at the party and involved in the fight. One specifically identified Romero as the person who stabbed Barrasso.

Barrasso was again interviewed after he was released from the hospital. He stated that after initially viewing Romero's picture at the hospital, he had seen "extensive[] social media" content of the fight and was confident he could identify Romero without assistance. Two days later, Barrasso picked Romero out of a photo line-up.

The next month, Romero was arrested and charged with four felonies including first-degree home invasion and assault with intent to do great bodily harm less than murder (AWIGBH). Ultimately, Romero pleaded *nolo contendere* to first-degree home invasion and AWIGBH, and sentenced as a third-offense habitual offender to 15 to 40 years' imprisonment for the home invasion conviction and 10 to 20 years' imprisonment for the AWIGBH conviction.

## B. PROCEDURAL POSTURE

Romero, through appointed counsel, initially filed a delayed application for leave to appeal in Docket No. 355772. In that first appeal, counsel raised only issues with the scoring of Romero's guidelines and this Court did not find merit on the grounds presented and denied Romero's application. *People v Romero*, unpublished order of the Court of Appeals, entered February 23, 2021 (Docket No. 355772). Through the present appellate counsel, Romero then moved in the trial court for relief from judgment. Romero argued that his plea was not knowing or intelligent because trial counsel failed to advise Romero of potential issues involving Barrasso's single photograph identification and that his original appellate counsel was ineffective for failing to raise this issue on direct appeal. The trial court denied Romero's motion, finding he did not establish good cause or actual prejudice under MCR 6.508(D). Romero filed this appeal in a delayed application for leave to appeal, which we granted and limited only to issues raised in this delayed application. *People v Romero*, unpublished order of the Court of Appeals, entered December 1, 2023 (Docket No. 365941).

## II. ANALYSIS

Because this is Romero's first motion for relief from judgment, he must show that there is good cause for failing to raise the issue presented to this Court now in his direct appeal. MCR 6.508(D)(3)(a). If good cause is shown, Romero must demonstrate actual prejudice. MCR 6.508(D)(3)(b). In the context of plea appeals, "actual prejudice" is demonstrated where "the defect in the proceedings was such that it renders the plea an involuntary one to a degree that it would be manifestly unjust to allow the conviction to stand." MCR 6.508(D)(3)(b)(ii).

The trial court denied Romero's motion, and we review that decision for an abuse of discretion. *People v Owens*, 338 Mich App 101, 113; 979 NW2d 345 (2021). On this record, we cannot find that the trial court did not "select a reasonable and principled outcome." *People v Simon*, 339 Mich App 568, 580; 984 NW2d 800 (2021).

## A. GOOD CAUSE

Romero presents two arguments to demonstrate good cause under MCR 6.508(D)(3)(a). The first we dispose of in relatively quick order because it lacks merit.

### 1. ACTUAL INNOCENCE

Romero argues the good cause requirement should be waived because Barrasso's single photograph identification of Romero is unreliable, leading to the possibility that Romero is innocent. "The court may waive the 'good cause' requirement of subrule [MCR 6.508](D)(3)(a) if it concludes that there is a *significant possibility* that the defendant is innocent of the crime." MCR 6.580(D)(3) (emphasis added). The trial court brought attention to the fact that Romero assaulted Barrasso in front of witnesses who could also identify him, and the prosecution had other evidence of identification such as the potentially admissible hearsay statements from other partygoers and videos shared to Snapchat. In short, Romero did not sufficiently prove there was a significant possibility he was innocent. MCR 6.580(D)(3). Therefore, the trial court did not abuse its discretion when it did not waive the good cause requirement. *Owens*, 338 Mich App at 113; *Simon*, 339 Mich App at 580.

## 2. INEFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE COUNSELS

Alternatively, Romero argues good cause existed because his original appellate counsel was ineffective. Specifically:

> [T]he phrase good cause for failure to raise such grounds on appeal or in a prior motion requires a defendant to show good cause for failure to raise a claim in an appeal if one is filed, or in a prior motion if one is filed, or in both if both are filed. [*People v Clark*, 274 Mich App 248, 253; 732 NW2d 605 (2007).]

Good cause can be demonstrated by establishing appellate counsel was ineffective for not raising the issue previously. *People v Reed*, 449 Mich 375, 378; 535 NW2d 496 (1995). Ineffectiveness of appellate counsel is reviewed using the same standard that we apply when determining ineffectiveness of trial counsel. *Fyda*, 288 Mich App at 450. Here, our analysis has multiple layers. To show his original appellate counsel's representation fell below an objective standard of reasonableness, Romero must first demonstrate that *trial* counsel was ineffective. *Id*. We start there.

"When reviewing defense counsel's performance, the reviewing court must first objectively 'determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.' " *People v Jackson (On Reconsideration)*, 313 Mich App 409, 431; 884 NW2d 297 (2015), quoting *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Romero then must show that "but for counsel's deficient performance, a different result would have been reasonably probable." *Armstrong*, 490 Mich at 290.

"To establish ineffective assistance of counsel in the context of a guilty plea, courts must determine whether the defendant tendered a plea voluntarily and understandingly." *People v Corteway*, 212 Mich App 442, 445; 538 NW2d 60 (1995). As this Court has previously established, failure to discuss possible defenses can render a plea involuntary or lacking understanding. *People v Thew*, 201 Mich App 78, 92-94; 506 NW2d 547 (1993). Like *Thew* discussed, the defense need not be a complete one, just one that could cause the jury to find at least one element of the offense is lacking proof beyond a reasonable doubt. *Id*.

The trial court was correct when it found that Barrasso's initial identification of Romero was impermissibly suggestive and inadmissible. It was incorrect, though, when it inferred that Romero had an independent basis for making that identification. *See People v Gray*, 457 Mich 107, 115-116; 577 NW2d 92 (1998) (enumerating factors to consider whether an eyewitness identification has an independent basis). He did not. In fact, he made clear two claims to the police officer during his initial interview: (1) he did not remember being stabbed and (2) he had no prior relationship with or knowledge of Romero, aside from seemingly having heard his name before and remembering it as "Valentino." That, coupled with the additional factors of age, drinking, and a compromised psychological and physical state, allows for no reason to believe that Barrasso had an independent basis for identifying Romero aside from the single photo shown by police officers. *Id*. As a result, any subsequent identifications by Barrasso—in the photo array, and any hypothetical ones at trial or pre-trial proceedings—would likewise be unreliable, and largely based upon the initial exposure to a single photo and repeated exposure thereafter on social

media and in subsequent police interactions. *People v Posey*, 512 Mich 317, 367-368; 1 NW3d 101 (2023) (CAVANAUGH, J., concurring) (internal citations omitted) ("The requirement that any pretrial identification procedure be nonsuggestive is well established, as are the types of identification procedures that meet this requirement. There is quite simply no evidence that the state lacks the knowledge or the ability to use a nonsuggestive pretrial identification procedure where one is necessary to ensure that a trial identification is sufficiently reliable.")

The admissibility and reliability of the victim's identification, whether it is the lone identification or not, is something that a defense counsel should discuss with their client. Here, the record reflects, albeit by way of an affidavit and not a *Ginther* hearing[4] transcript with testimony taken under oath, that Romero did not understand the questionable circumstances by which the lone victim in his case came to identify him. Here, then, like in *Thew,* we have

> a serious question whether [the] defendant's guilty plea was the result of a sufficiently informed choice that constituted a voluntary and knowing act. The record does not show whether defense counsel rendered effective assistance of counsel by making certain that [the] defendant was aware of the nature of the charges and the consequences of his guilty plea or of alternative courses of actions [sic], including defenses available against the charged offenses to which he offered a plea, as well as any lesser included offenses. [*Thew*, 201 Mich App at 95.]

Additionally, we can gather from the record, again by way of affidavit, that Romero would not have pled had he been more informed about the factual record underlying his charges. In the context of a plea, prejudice is shown where a defendant demonstrates that the result of the plea proceeding would have been different. *See People v Fonville*, 291 Mich App 363, 394; 804 NW2d 878 (2011) ("This failure, therefore, prejudiced Fonville to the extent that, but for counsel's error, the result of the proceeding would have been different. Fonville repeatedly informed the trial court that he would not have pleaded guilty of child enticement if he had known that he would also be required to register as a sex offender."). To the extent it factored into this initial ineffective assistance of counsel analysis, the trial court erred in considering whether there was "a reasonable probability that the outcome of this matter would have been different had [the] defendant refused the plea deal and gone to trial." Simply put, the present record presents a much closer question as to the ineffectiveness of trial counsel than the trial court opinion lets on.

The same can be said as to whether appellate counsel was ineffective for failing to raise ineffective assistance of trial counsel. On this record, Romero's current appellate counsel asked Romero's previous appellate counsel if she spoke to Romero about the issue of Barrasso's identification. Romero's previous appellate counsel stated "she remembered discussing 'some of the evidentiary issues' with Romero and told him pursuing any of those issues would require plea withdrawal, which entailed risk." Romero's current appellate counsel also noted previous appellate counsel did not state whether she spoke to Romero about the issue of the single

---

[4] Termed after *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973), a *Ginther* hearing refers to an evidentiary hearing granted when a defendant claims they received ineffective assistance of counsel in their case.

photograph identification.  At minimum, then, original appellate counsel did discuss with Romero evidentiary issues generally and the risks of withdrawing a plea.

On the other hand, Romero's affidavit states that he was not informed at all about this particular way in which trial counsel had been potentially ineffective.  And, had he known of this issue, he would have directed his appellate attorney to pursue plea withdrawal by way of an ineffective assistance of trial counsel claim.

## B.  ACTUAL PREJUDICE

Actual prejudice as contemplated by the court rules here need not demonstrate actual innocence or even, as the trial court put it, that the outcome of trial would be different or the term in prison shorter.  The manifest injustice requisite to show actual prejudice can be one of a deeply unjust *process* rather than outcome.  *People v White*, 337 Mich App 558, 577-578: 977 NW2d 138 (2021).

It is here where the trial court's observations about the other evidence supporting Romero's identity is well-received.  From that, we know Romero's identity could have been proven in other ways aside from Barrasso's faulty identification and thus, the risks associated with going to trial remained.  Put differently, even if we assume trial counsel and appellate counsel were ineffective, the advice to Romero would not have changed substantially with the identification issue in mind because of the other ways in which Romero could have been identified at trial.  Appellate counsel argues here that there was no other evidence linking Romero to the stabbing aside from the unreliable identification from Barrasso following the police showing of a single photo.  But that is not entirely true.  First, there was a witness who stated that at the party he approached a battered and bleeding Barrasso who said that "Velentin stabbed him."[5]  Additionally, while no one identifies Romero as the stabber directly, several people with preexisting knowledge of Romero, and therefore more reliable identifications of him, do state that Romero was the last person seen with Barrasso, actively beating on Barrasso, before Barrasso was observed with a stab wound.  In other words, while direct evidence may be lacking, although not wholly absent, there is significant indirect evidence supporting that Barrasso was stabbed by Romero.

And while ineffective assistance of counsel at either the trial level or appellate level could rise to the level of manifest injustice, we do not have that on this record.  We know from present appellate counsel's own affidavit, as well as Romero's, that original appellate counsel shared at least some of the evidentiary landscape with Romero and the risks and rewards of a plea withdrawal.  That is further supported by the plea transcript, where Romero answered affirmatively questions about understanding the rights he was forgoing and the consequences he faced. Additionally, we know that the risk/reward calculus of plea withdrawal remains unchanged in many respects in the event that Barrasso's identification was inadmissible because there were other ways in which Romero could have been identified, including both video evidence and additional eyewitness identification.  Given the record before us, we find no avenue in which, even with

---

[5] Now, how Barrasso learned the name "Velentin" having no prior knowledge of Romero is a question that may have called into question the reliability of *that* identification as well, but that would have been for the jury to decide.

-6-

further development of the record, Romero can demonstrate that it is "manifestly unjust to allow the conviction to stand." MCR 6.508(D)(3)(b)(ii). For this reason, we deny the motion to remand for further development of the record.

## IV. CONCLUSION

Because Romero failed to establish entitlement to relief from judgment, the trial court did not abuse its discretion when it denied Romero's motion for relief from judgment. Affirmed.

/s/ Michael J. Riordan
/s/ Adrienne N. Young
/s/ Randy J. Wallace