*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DAEVON MARSHAWN REMBERT,

Defendant-Appellant.

UNPUBLISHED
February 11, 2025
10:17 AM

No. 362785
Eaton Circuit Court
LC No. 2019-020042-FC

Before: N. P. HOOD, P.J., and REDFORD and MALDONADO, JJ.

PER CURIAM.

Defendant, Daevon Marshawn Rembert, appeals as on leave granted[1] his guilty-plea convictions of two counts of armed robbery, MCL 750.529. Defendant was sentenced to serve 135 to 480 months' imprisonment for each count of armed robbery, to be served concurrently. We reverse.

## I. BACKGROUND

This case arises from an armed robbery perpetrated against a Biggby coffee shop. It is undisputed that defendant drove his two codefendants that day, that he dropped them off near the coffee shop, that they robbed the coffee shop at gun point, and that he drove them away. The central dispute pertains to defendant's knowledge and intent. Defendant's version of events has been consistent throughout the proceedings. Defendant maintains that his friends requested his help with a scam. According to defendant, he was told and believed that there was a "white boy" who was planning to purchase drugs for $300. Defendant believed his friends planned to take the money and flee without providing any drugs, and he did not know they were armed until seeing the gun upon their return to his car. Defendant maintains that he then helped them flee, but he did not know that they had robbed a Biggby until he was told as much by the police.

---

[1] *People v Rembert*, 512 Mich 957 (2023).

Defendant pleaded guilty as described earlier pursuant to a *Cobbs*[2] agreement. At the plea hearing, the court encountered difficulty establishing a factual basis because defendant continued to maintain that he did not know his codefendants were armed or that they intended to rob a Biggby until after the fact. The court ultimately accepted the plea because defendant, while denying knowledge of the gun, admitted to knowing that the codefendants planned to perpetrate a "robbery" against someone. Defendant subsequently moved to withdraw his plea, arguing that the factual basis was inadequate. This motion was denied, and defendant sought leave to appeal in this Court. On appeal, defendant also raised a claim of ineffective assistance of counsel. Defendant's leave application was denied,[3] but the Supreme Court directed this Court to hear the appeal as on leave granted. After the case returned to this Court, defendant then filed another motion in the circuit court seeking withdrawal of his guilty plea, this time asserting a claim of ineffective assistance of counsel. The circuit court conducted a *Ginther*[4] hearing but ultimately denied this motion. The case is now before us to be heard on the merits.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he is entitled to withdraw his guilty plea because he received ineffective assistance of counsel, and this resulted in a plea that was involuntarily and unknowingly tendered. We agree.

Claims of ineffective assistance of counsel present mixed questions of fact and law. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). Factual findings are reviewed for clear error and legal conclusions are reviewed de novo. *Id*.

"To establish ineffective assistance of counsel, a defendant must show that counsel's performance was below an objective standard of reasonableness under prevailing professional norms and there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *People v Effinger*, 212 Mich App 67, 69; 536 NW2d 809 (1995). "[A] reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018). "When ineffective assistance of counsel is claimed in the context of a guilty plea, the relevant inquiry is whether the defendant tendered the plea voluntarily and understandingly." *People v White*, 307 Mich App 425, 431; 862 NW2d 1 (2014). "The question is not whether a court would, in retrospect, consider counsel's advice to be right or wrong, but whether the advice was within the range of competence demanded of attorneys in criminal cases." *People v Thew*, 201 Mich App 78, 89-90; 506 NW2d 547 (1993). Examples of situations in which trial counsel's errors deprive a defendant "of the ability to make an intelligent and informed decision regarding the available options" include the failure "to explain adequately the nature of the charges" and the failure "to explain possible defenses to the charges." *White*, 307 Mich App at 431.

---

[2] *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993).

[3] *People v Rembert*, unpublished order of the Court of Appeals, entered November 2, 2022 (Docket No. 362785).

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

At the *Ginther* hearing, trial counsel adamantly maintained that there was no viable defense to these charges. Thus, a fair assessment of trial counsel's performance requires a determination of whether defendant's version of events, assuming arguendo that he is being truthful, constitutes aiding and abetting an armed robbery. At the outset, it is important to note that, while defendant clearly knew after the fact that his codefendants committed an armed robbery, this alone does not make him liable as an aider and abettor. A person is criminally liable "as if he [or she] had directly committed the offense" if the person "procures, counsels, aids, or abets *in its commission* . . . ." MCL 767.39 (emphasis added). Helping a criminal escape after committing a crime, while obviously illegal, does not make the person responsible for the underlying crime. *People v Lucas*, 402 Mich 302, 304-305; 262 NW2d 662 (1978). On the other hand, "[a]n 'accessory after the fact' . . . is one who, with knowledge of the other's guilt, renders assistance to a felon in the effort to hinder his detection, arrest, trial or punishment." *Lucas*, 402 Mich at 304 (quotation marks and citation omitted). Therefore, while defendant clearly admits to being an accessory after the fact, assisting his codefendants after learning that they committed some sort of an armed robbery is not enough to establish aiding and abetting. See *id*.

Conviction pursuant to an aiding and abetting theory requires proof of the following three elements:

> (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that the defendant gave aid and encouragement. [*People v Robinson*, 475 Mich 1, 6; 715 NW2d 44 (2006) (quotation marks, citation, and alteration omitted).]

"A defendant is liable for the crime the defendant intends to aid or abet as well as the natural and probable consequences of that crime." *Id*. at 15 (footnote and alteration omitted).

Defendant has described an intent to aid and abet a larceny,[5] and there does not appear to be any authority suggesting as a matter of law that armed robbery inherently is a natural and probable consequence of larceny. We believe that the proper approach is to examine the intended crime, examine the actual crime, and then determine whether the actual crime was a natural and probable consequence of the intended crime. When viewed in this light, robbing a coffee shop at gunpoint clearly is not a natural and probable consequence of swindling a would-be drug buyer. If the codefendants had truly exited defendant's car unarmed with the intention of entering the apartment building and running off with $300, there is no world in which they instead would have wound up in a Biggby, with a gun in people's faces, demanding money.

The prosecution argues, without citation to authority, that drug deals are so inherently dangerous that anyone involved should foresee the outbreak of violence. However, this is a broad generalization that is highly susceptible to sharp rebuttal. The prosecution also argues that, in this particular case, defendant could have foreseen that violence could have broken out if the would-be drug purchaser forcefully resisted the codefendants' attempt to steal from him and that a dangerous

---

[5] See MCL 750.356(1)(a), (4)(a).

weapon could have become involved. While defendant would most likely be criminally liable if that had occurred, the prosecution is wading deep into hypotheticals. It could be difficult to convince a jury to hold defendant responsible for the armed robbery of a coffee shop on the basis of the possibility that an imaginary drug deal could have escalated into an imaginary struggle involving an imaginary weapon.

In sum, if a jury believed defendant was credible, it appears highly likely it would acquit. However, trial counsel advised defendant to accept the *Cobbs* agreement because he did not believe defendant could succeed at trial. Trial counsel testified that his only option at trial would be "to probably argue some sort of jury nullification." Trial counsel was asked to explain why "jury nullification" would be necessary if defendant "didn't share the same intent with" his codefendants. Counsel responded:

> Well, because that's not the standard in my humble opinion. If you decide to go along—first of all, he knew they were going to do something that wasn't legal; he told me that. He didn't think it was going to go to the extent that it went, but you know, anybody heard of felony murder? I mean, it happens all the time. Somebody gets killed, you're charged with murder, you went there with no intent to murder anybody; no intent to even have a death occur, but it happens. As I told [defendant], you're in for a penny; you're in for a pound. Whatever they do, because you were with them, and agreed to be with them and agreed to be a part of it, you are now part of it.

Even the trial court acknowledged that trial counsel "gave an incorrect recitation of the law on aiding and abetting while testifying at the hearing."

It is also clear from the record that defendant did not understand the difference between robbery and larceny. As discussed, defendant has steadily maintained that he believed the plan was to trick a prospective drug-buyer into giving them $300 and then flee. However, defendant also stated multiple times—to his detriment—that he knew his codefendants planned to rob someone. This suggests that defendant did not understand the legal distinction between robbery and larceny. If his trial counsel had explained it to him, he might have spoken more precisely. Instead, defendant was most likely using the term colloquially as a synonym for stealing. Indeed, trial counsel admitted that he did not explain the elements of the charged offenses to defendant because defendant was "a very intelligent young man" who would "be insulted" if the law governing his case was "read to him like he doesn't know how to read himself."

Finally, it is clear from the record that trial counsel failed to inform defendant of the terms of his *Cobbs* agreement until immediately before the plea was entered. At the start of the hearing, trial counsel told the court that he "just advised" defendant that the minimum sentence was "11 and not 10." The court then had to tell trial counsel that he was still not accurately relaying the terms of the agreement because the actual minimum sentence was 11 years and 3 months. At this point, trial counsel asked defendant to decide on the spot if he was willing to accept a sentence that was 15 months longer than what he expected. After initially asking defendant if he "still want[s] to do this," he pressed defendant by saying, "No? Yes?" At this point, defendant acquiesced and said, "Yeah, I'll do it." At the *Ginther* hearing, defendant described himself as having felt "very unsettled" and "caught off guard" when he learned the actual terms of the *Cobbs*

agreement. This failure to tell defendant the terms of his plea agreement also diminished his ability to give a knowing, and therefore voluntary, guilty plea. See *People v Fonville*, 291 Mich App 363, 394; 804 NW2d 878 (2011) (holding "that defense counsel's failure to inform Fonville that his plea would require registration as a sex offender affected whether his plea was knowingly made").

In sum, trial counsel advised defendant that he could not prevail at trial on the basis of a misunderstanding of the law, defendant pleaded guilty without understanding that he had been describing a scheme to commit larceny rather than robbery, and trial counsel did not accurately describe the terms of the *Cobbs* agreement until immediately before defendant pleaded guilty. Accordingly, it is clear that defendant was given ineffective assistance, and this ineffective assistance rendered the plea "unknowing and, consequently, involuntary." *Fonville*, 291 Mich App at 384 (quotation marks and citation omitted). Therefore, defendant is entitled to withdrawal of the plea.[6]

## III. CONCLUSION

Defendant's convictions of two counts of armed robbery are reversed. This case is remanded to the trial court for additional proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Noah P. Hood
/s/ Allie Greenleaf Maldonado

---

[6] Because this conclusion resolves the appeal, we decline to address whether defendant's guilt plea established an adequate factual basis.