# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* S. PALMER, Minor.

UNPUBLISHED
June 7, 2018

No. 340355
Livingston Circuit Court
Family Division
LC No. 2016-015263-NA

Before: O'CONNELL, P.J., and K. F. KELLY and RIORDAN, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court's order terminating his parental rights to his daughter. The trial court determined that statutory grounds for termination existed under MCL 712A.19b(3)(c)(*i*) (conditions that led to the adjudication continue to exist), (g) (failure to provide proper care and custody), and (j) (risk of harm to the child). We affirm.

## I. FACTS

The child first came to the attention of the Department of Health and Human Services (DHHS) when the child's mother contacted the police after she suffered "paranoid delusions" that led her to believe that respondent was spying on her by using the electronics and children's toys in her home. When the child's mother's car was found abandoned near her old residence, the police issued an alert. The police learned that the child's mother was traveling with a registered sex offender, whose cell phone was traced to a location in Florida, where the child and her mother were discovered. At the time, respondent was incarcerated as the result of his most recent domestic violence conviction for conduct against the child's mother. A Child Protective Services (CPS) worker facilitated the child's safe return to Michigan.

Respondent and the child's mother pleaded to the allegations in the petition, and the trial court took jurisdiction over the child. Among those allegations, respondent agreed that the child and her mother were living in Livingston County. Respondent failed to make progress in the case service plan after several months, so the trial court authorized the filing of a petition seeking termination of his parental rights. The child was returned to her mother shortly thereafter. After an evidentiary hearing, the trial court terminated respondent's parental rights.

## II. ANALYSIS

### A. THE TRIAL COURT'S ASSUMPTION OF JURISDICTION

-1-

Respondent first argues that the trial court improperly exercised jurisdiction over the child because she was not "found within" Livingston County as required by MCL 712A.2(b) and MCR 3.926(A). We disagree. This Court reviews "the trial court's decision to exercise jurisdiction for clear error in light of the court's findings of fact . . . ." *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*. at 296-297.

Respondent's challenge to the trial court's assumption of jurisdiction over the child on the ground of the child's physical whereabouts at certain times constitutes a collateral attack on the trial court's exercise of jurisdiction over the child. Such an attack is not permissible "when a termination occurs following the filing of a supplemental petition for termination after the issuance of the initial dispositional order." *In re SLH, AJH, & VAH*, 277 Mich App 662, 668; 747 NW2d 547 (2008). In this case, the termination of respondent's parental rights followed this procedural course. Further, the lawyer-guardian ad litem joined respondent in declining to object to the trial court's jurisdiction. Although the child's mother's attorney unsuccessfully objected to venue at the second preliminary hearing when the parties discussed the child's return to Michigan from Florida, the child soon returned to Michigan to live in Livingston County, and counsel did not renew any objection afterward. Therefore, the trial court correctly took jurisdiction.

Respondent endeavors to make capital out of the mother's brief flight to Florida with the child, but this detour ultimately did not affect the trial court's jurisdiction. MCL 712A.2(b) sets forth the jurisdiction of the family division of the circuit court:

> (b) Jurisdiction in proceedings concerning a juvenile under 18 years of age found within the county:
>
> (1) Whose parent . . . neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, [or] who is subject to a substantial risk of harm to his or her mental well-being . . . [or]
>
> * * *
>
> (2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent . . . is an unfit place for the juvenile to live in. [MCL 712A.2(b)(1) and (2).]

"As used in MCL 712A.2, a child is 'found within the county' in which the offense against the child occurred . . . or in which the minor is physically present." MCR 3.926(A). When the trial court took jurisdiction over the child, the child had returned to Michigan and was living with her mother in Livingston County. Respondent conceded as much when he pleaded to the allegations in the petition, which included an allegation that the child and her mother lived in Livingston County. Accordingly, the child's physical presence in Livingston County gave the trial court the authority to assume jurisdiction over her.

Respondent also argues that the trial court impermissibly created the grounds for termination when it ordered that the child be brought back to Michigan from Florida. Respondent relies on *In re B & J*, 279 Mich App 12; 756 NW2d 234 (2008), in which this Court held that "when the state deliberately takes action with the purpose of virtually assuring the creation of a ground for termination of parental rights, and then proceeds to seek termination on that very ground, the state violates the due process rights of the parent." *Id.* at 19-20 (quotation marks, citation, and alteration omitted). In this case, however, the trial court did not take any action leading to the acts or omissions of respondent that ultimately resulted in the termination of his parental rights. The trial court merely ordered that the child be brought back to her home state of Michigan so that it could appropriately exercise jurisdiction over the child. This order is distinct from engineering factual grounds for termination of parental rights and then proceeding to termination on those grounds. For these reasons, we reject respondent's collateral challenge to the trial court's exercise of jurisdiction over the child.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Respondent argues that he was denied effective assistance of counsel when his trial attorney failed to object to the trial court's exercise of jurisdiction over the child and advised him to plead to the allegations in the petition. We disagree. When analyzing claims of ineffective assistance of counsel in termination hearings, this Court applies by analogy the principles governing claims of ineffective assistance of counsel in the criminal context. *In re Rogers*, 160 Mich App 500, 502; 409 NW2d 486 (1987). Respondent did not preserve this issue, so "our review of the issue is limited to errors apparent on the record." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). A party pressing a claim of ineffective assistance of counsel must establish that counsel's performance was deficient and that the deficient performance prejudiced the claimant. *In re Martin*, 316 Mich App 73, 85; 896 NW2d 452 (2016).

Respondent argues that his trial counsel was ineffective for failing to object when the trial court took jurisdiction over the child. Failure "to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 205; 793 NW2d 120 (2010). Because we concluded that the trial court appropriately exercised jurisdiction over the child, we now conclude that respondent's trial attorney was not deficient for failing to object to that assertion of jurisdiction.

Respondent next argues that his trial attorney was ineffective for advising him to plead to the allegations in the petition. Whether counsel was ineffective for advising a client to tender a plea turns on whether the plea was voluntary and understanding. *People v Thew*, 201 Mich App 78, 89; 506 NW2d 547 (1993). "The question is not whether a court would, in retrospect, consider counsel's advice to be right or wrong, but whether the advice was within the range of competence demanded of attorneys . . . ." *Id.* at 89-90. Counsel is obliged to explain the range and consequences of available choices in sufficient detail to enable the client to make an intelligent and informed choice. *People v White*, 307 Mich App 425, 431; 862 NW2d 1 (2014).

In this case, respondent identifies no evidence showing that he did not understand the consequences of his decision to plead to the allegations in the petition. On the contrary, respondent clearly indicated to the trial court that he understood the consequences of a plea and that his plea was not the result of substance abuse, threats, or promises. Accordingly,

respondent's trial counsel was not deficient for advising respondent to plead to the allegations in the petition. Further, there is no reasonable probability that the outcome of the proceedings would have been different had respondent not offered his plea. As we previously concluded, venue was proper because the child lived in Livingston County at the relevant time.

In addition, respondent has not shown prejudice. Even if respondent had not admitted the allegations, DHHS produced ample evidence supporting the allegations of respondent's parental unfitness. This evidence included respondent's illegal sale of narcotics, an additional domestic violence conviction even after completing a course to address this behavior, his failure to provide food and clothing for the child, and his failure to attend counseling or to show that he completed psychological or drug abuse assessments, as requested by DHHS. For these reasons, we reject respondent's claim of ineffective assistance of counsel.

## C. REASONABLE EFFORTS AT REUNIFICATION

Respondent argues that the trial court erred by concluding that DHHS made reasonable efforts to reunify the family. We disagree. This Court reviews for clear error the trial court's factual findings regarding the reasonable efforts made toward reunification of the family. *In re Fried*, 266 Mich App 535, 541-543; 702 NW2d 192 (2005). " 'Reasonable efforts to reunify the child and family must be made in *all* cases' except those involving aggravated circumstances . . . [,]" *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010), quoting MCL 712A.19a(2), none of which were present in this case. In *Mason*, DHHS did not provide an incarcerated respondent with an opportunity to participate in numerous hearings leading up to the termination of his parental rights, and DHHS did not contact the respondent or the correctional facility regarding the respondent's need for services. *Mason*, 486 Mich at 148-150, 157. Our Supreme Court held that reasonable efforts toward reunification were required and that DHHS's failure to allow the respondent a reasonable opportunity to participate in services resulted in a "hole" in the evidentiary record that rendered termination of parental rights improper. *Id.* at 158-160.

First, the "time for asserting the need for accommodation in services is when the court adopts a service plan . . . ." *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012) (quotation marks and citation omitted). In this case, respondent has not shown that he objected to the scope or kinds of services offered, and our review of the record has brought none to light.

Moreover, the record shows that DHHS involved respondent in the proceedings. Although it is not clear whether respondent received the parent agency treatment plans, the case service plans indicated that he participated in the service plans. The foster care worker testified that she was unsure whether anyone from DHHS ever examined the availability of department-approved resources that respondent might have taken advantage of while incarcerated. Nonetheless, DHHS contacted respondent personally to keep him apprised of the progress in this case, to update him with information regarding the child, to request information from him regarding his needs and completion of services, or to provide him with copies of the service plan. Respondent participated in nearly all of the hearings up to and including the termination

hearing.[1]  Respondent insisted that he had received psychological and substance abuse assessments in the past, but he did not provide documentation to DHHS to verify these claims. He also maintained that he was on the waiting list for multiple services in prison. Respondent maintained contact with DHHS by letter, notifying DHHS that he was participating in vocational classes while in prison, as he testified at the termination hearing. By respondent's own testimony, then, he was taking advantage of some opportunities to comply with the requirements of the case service plan.

Additionally, unlike the respondent in *Mason*, 486 Mich at 163, respondent had not arranged for adequate housing or a legal source of income following his release from prison, which was not imminent, no earlier than one and a half years after the termination hearing. Respondent could not contact his daughter while incarcerated because of a no-contact order, not for reasons attributable to DHHS. Further, the trial court did not terminate respondent's parental rights "on the basis of circumstances and missing information directly attributable to respondent's lack of meaningful prior participation." *Mason*, 486 Mich at 159-160 (quotation marks and citation omitted). Instead, the trial court explained in great detail how the facts in evidence satisfied the statutory grounds for termination. For these reasons, there is no "hole" in the evidentiary record for want of respondent's opportunity to take advantage of services.

## D. BEST INTERESTS

Finally, respondent argues that the trial court clearly erred by concluding that termination was in the best interests of the child. We disagree. A trial court's determination concerning a child's best interests is reviewed for clear error. *In re Trejo Minors*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). Whether "termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The trial court "may consider the child's bond to the parent, the parent's parenting ability, [and] the child's need for permanency, stability, and finality." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). A court may also consider "the length of time the child was in care, the likelihood that the child could be returned to her parents' home within the foreseeable future, if at all, and compliance with the case service plan." *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 64; 874 NW2d 205 (2015) (quotation marks and citation omitted). A "parent's history of domestic violence" and a parent's "visitation history with the child" are also relevant considerations. *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014). A child's desire not to be alone with a parent is also relevant. *In re Schadler*, 315 Mich App 406, 412; 890 NW2d 676 (2016). Additionally, a trial court may consider whether the evidence shows that the child would not be safe in the parent's custody. *In re VanDalen*, 293 Mich App 120, 141; 809 NW2d 412 (2011).

In this case, both the child's mother and the foster care worker testified that respondent did not establish a bond with his daughter. The foster care worker additionally highlighted the

---

[1] Although respondent was not present for the final dispositional hearing because of a timing error on the part of the trial court, that hiccup hardly deprived respondent of a meaningful opportunity to participate in the proceedings below.

importance of consistent interaction between parents and their children to facilitate an appropriate bond, but imprisonment greatly restricts such opportunities even for prisoners who are keen to have such interactions. Respondent spent only one and a half years with his daughter since she was born in 2008 and has spent the rest of her life in prison. He will not be eligible for parole until December 2019, so that release date, even if assured, would not be imminent. The foster care worker also reported that the child had not asked about respondent since he began his most recent term of imprisonment, had shown little concern about his future, and had not spoken of respondent during any meetings. Further, respondent admitted that he had not participated in any services since beginning with his most recent term of incarceration, and during that time, he had no visitation with this child.

Respondent's criminal activity also supports the trial court's conclusion. Respondent engaged in illegal drug sales from the home he shared with the child, and he did not recognize such activity as posing a danger to the child or as a barrier to his reunification. Respondent's most recent conviction stemmed from an incident in which he attempted to use a truck to ram a vehicle containing the child and her mother. Although there is no evidence that respondent ever physically abused the child, he has twice been convicted of committing acts of domestic violence against the child's mother, which the child witnessed, and the child's mother testified that many more instances of domestic violence occurred.

Respondent emphasizes that the child was residing with her mother by the time of the termination hearing, but he maintains that the trial court failed to consider this relative placement. The trial court explicitly acknowledged the child's placement with her mother, however, thus satisfying its obligation to consider the child's placement with a relative. See *Olive/Metts*, 297 Mich App at 43. In sum, the trial court clearly articulated its analysis of the child's best interests, and the evidence clearly supported the trial court's conclusion that termination was in the best interests of the child.

We affirm.

/s/ Peter D. O'Connell
/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan

-6-