*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* CARMONEY, Minors.

UNPUBLISHED
October 13, 2022

Nos. 361073; 361137
Osceola Circuit Court
Family Division
LC No. 11-004826-NA

Before: MARKEY, P.J., and SAWYER and BOONSTRA, JJ.

PER CURIAM.

In these consolidated appeals,[1] respondent-father and respondent-mother appeal by right the trial court's order terminating respondent-mother's parental rights to the minor children JLC and TDC, and respondent-father's parental rights to TDC,[2] under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), and (j). We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In December 2020, petitioner, the Department of Health and Human Services (DHHS), filed a petition requesting that the trial court take in-home jurisdiction over the children. The petition included allegations of improper supervision and child maltreatment, and also alleged that respondents had refused to cooperate with DHHS and Children's Protective Services. At the time of the December 2020 petition, both respondents were incarcerated and the children were living with their paternal grandmother. The trial court authorized the petition and ordered that respondents engage in services. According to respondent-mother's initial parent-agency treatment plan (PATP), she was required to participate in substance abuse treatment; according to respondent-father's initial PATP, he was required to obtain legal employment and suitable housing

---

[1] *In re Carmoney Minors*, unpublished order of the Court of Appeals, entered May 6, 2022 (Docket Nos. 361073 and 361137).

[2] Respondent-father is not the legal father of JLC. During the termination proceedings, JLC's legal father released his parental rights to JLC, and the trial court issued an order to this effect. JLC's father is not a party to this appeal.

upon release from incarceration, participate in random drug screens, participate in substance abuse treatment, and participate in mental health services.

In January 2021, respondent-mother's fiancé took over care of the children, but he was arrested in February 2021 and was unable to provide further care for them. The children were temporarily placed with respondent-mother's fiancé's mother. Also in February 2021, respondent-mother was released from jail on bond with the condition that she enter an inpatient substance abuse treatment center, Sunrise Centre. In March 2021, respondent-mother left Sunrise Centre against medical advice, violating her bond condition; a warrant was subsequently issued for her arrest. Respondent-mother picked her children up from school on March 15, 2021; that same day, respondent-mother's fiancé's mother informed DHHS that she would no longer be able to care for the children. The trial court entered an ex parte order the next day, removing the children from respondent-mother's care and placing them in nonrelative foster care. Respondent-mother was arrested during the children's removal and her bond was revoked. DHHS subsequently filed a supplemental petition requesting removal of the children from respondent-mother's care based on these events, which the trial court authorized.

Respondent-father was released from jail in April 2021. Also in April 2021, respondent-mother was transferred from jail to an inpatient substance abuse rehabilitation center. After a review hearing in May 2021, respondent-mother's PATP was updated to require that she not only attend substance abuse treatment, but also obtain suitable housing, obtain legal employment, participate in services for her emotional stability, and engage in services to improve her parenting skills. Respondent-father's PATP was also updated in May 2021 and required not only that he obtain legal employment and suitable housing, participate in random drug screens, participate in substance abuse treatment, and participate in mental health services, but also that he engage in services to improve his parenting skills and behavior.

Respondent-mother completed her inpatient substance abuse treatment and was released from the center in July 2021. Over the next several months, respondent-mother and respondent-father failed to engage in or complete any of the services to which they were referred. Respondent-father also was arrested for obstructing a police officer in January 2022 and was again incarcerated. As a result, DHHS filed a supplemental petition in January 2022, requesting that the trial court terminate respondent-mother's parental rights to JLC and TDC, and respondent-father's parental rights to TDC. The petition was amended in March 2022 to add that respondent-mother's rights to two other children had been terminated in 2008, and that an arrest warrant had been issued for respondent-mother for violating her probation. The trial court authorized the petition and scheduled a termination hearing for March 30, 2022. The trial court also suspended parenting-time visits.

Respondent-mother did not attend the termination hearing; respondent-father attended remotely from jail. At the termination hearing, the children's caseworker testified that neither respondent-mother nor respondent-father had substantially participated in any of the services referred to them and had failed to adhere to any part of their PATPs. In total, respondent-father only attended four in-person parenting-time visits and several other virtual visits out of approximately 40 offered visits. Respondent-mother attended approximately 28 parenting-time visits, the majority of which were virtual, out of approximately 40 offered visits. In addition, the children's caseworker testified that after in-person visitation from either respondent, the children

had behavioral outbursts; JLC had severe anxiety before and after visitation and TDC engaged in aggressive behavior and inflected self-harm. After respondents stopped attending visits in person and requested only virtual visits, the children began to express that they no longer wanted to engage in visits. After the trial court suspended visitation, the children's behavioral issues subsided.

The foster care worker testified that respondent-father never participated in counseling, never submitted to a drug screen, never participated in any substance abuse services, and had failed to attend a substantial number of court hearings. Respondent-father had refused to allow a home visit, and refused to verify his employment despite claiming to be employed with a painting company.

The foster care worker testified that respondent-mother had completed her inpatient substance abuse treatment; however, she had only attended an intake appointment and one outpatient therapy session since her release. Respondent-mother was terminated from a parenting skills program for failure to participate. Respondent-mother failed to participate in drug screening and had never provided a negative drug test. Respondent-mother failed to verify her employment. Respondent-mother's probation officer testified that an arrest warrant for a probation violation had been issued for respondent-mother after she failed to submit to drug screening and failed to enroll in substance abuse treatment. The officer testified that if respondent-mother was located and arrested, he would recommend that respondent-mother's probation be revoked.

The children's foster parents testified that the children's behavioral issues would appear when they learned about a visit with either respondent, and would continue for two or three days after the visit. The foster parents testified that the children's behavior was improving while they were in their care, that the children were doing well overall, and that the foster parents were willing to adopt the children.

After the close of proofs, the trial court concluded that the statutory grounds for termination under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), and (j) were met for both respondents; that it was in the children's best interests to terminate respondent-mother's parental rights; and that it was in TDC's best interests to terminate respondent-father's parental rights. These appeals followed.

## II.  RESPONDENT-FATHER'S APPEAL (DOCKET NO 361073)

### A.  INEFFECTIVE ASSISTANCE OF COUNSEL

Respondent-father argues that his counsel's performance was ineffective at the termination hearing, because counsel failed to call witnesses and present evidence. We disagree. Because respondent did not for a new trial, move for an evidentiary hearing, or otherwise raise the issue before the trial court, our review is limited to errors apparent on the record. *In re AMB*, 248 Mich App 144, 231-232; 640 NW2d 262 (2001); *People v Thew*, 201 Mich App 78, 90; 506 NW2d 547 (1993).

"Whether counsel was ineffective presents a mixed question of fact and constitutional law, which we review, respectively, for clear error and de novo." *In re Mota*, 334 Mich App 300, 318; 964 NW2d 881 (2020).

The principles applicable to claims of ineffective assistance of counsel in the arena of criminal law also apply by analogy in child protective proceedings; therefore, it must be shown that (1) counsel's performance was deficient, falling below an objective standard of reasonableness, and that (2) the deficient performance prejudiced the respondent. To demonstrate prejudice, a party must show the existence of a reasonable probability that, but for counsel's error, the results of the proceeding would have been different, and a reasonable probability is one that is sufficient to undermine confidence in the outcome. [*Id*. at 318-319 (quotation marks and citations omitted).]

There is a strong presumption that trial counsel's performance constituted sound trial strategy. *In re Martin*, 316 Mich App 73, 87; 896 NW2d 452 (2016).

Counsel's decision not to call witnesses may be based on trial strategy. Because counsel's performance is presumed to constitute sound trial strategy, *Martin*, 316 Mich App at 87, respondent's counsel's failure to call witnesses does not demonstrate, by itself, that trial counsel's performance fell below an objective standard of reasonableness. And although respondent-father argues that a witness should have been called from his counseling organization to testify regarding his progress in counseling, there is no evidence in the record that respondent-father even attended counseling aside from a preliminary assessment. Respondent-father never provided proof of his participation in counseling, even after he was informed by the trial court that he should obtain progress reports and give those to his caseworker. Further, there is no indication from the record or respondent-father's brief that testimony from his counselor would have demonstrated that he made progress during counseling; nor does it appear more likely than not that testimony regarding respondent's progress in counselling would have overcome the wealth of other evidence that respondent-father failed to make progress on nearly every aspect of his PATP. Therefore, respondent-father has not carried his burden of showing that his counsel's failure to call witnesses amounted to deficient performance or prejudiced the proceedings against him. *Mota*, 334 Mich App at 318-319.

## B. STATUTORY GROUNDS FOR TERMINATION

Respondent-father also argues that the trial court erred by finding clear and convincing evidence to terminate his parental rights to TDC, because the statutory grounds for termination under MCL 712A.19b(3)(c)(*i*) and (j) were not established. We disagree.

We review for clear error a trial court's determination that statutory grounds for termination have been proven. *In re Sandborn*, 337 Mich App 252, 272; 976 NW2d 44 (2021). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*. at 272-273 (quotation marks and citation omitted). "In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *VanDalen*, 293 Mich App at 139. If the trial court did not clearly err by finding one statutory ground for terminating each respondent's parental rights, we do not need to address the additional statutory grounds because only one statutory ground must be proven. *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

Respondent-father argues that the trial court erred by finding that the statutory grounds for termination under MCL 712A.19b(3)(j) were met, because he rectified all the conditions that led to adjudication, and the children were not at risk of harm. We disagree. We note that the trial court found three statutory grounds for termination, but respondent-father only contests two grounds in his brief on appeal. "The failure to brief the merits of an allegation of error is deemed an abandonment of the issue." *In re JS & SM*, 231 Mich App 92, 98; 585 NW2d 326 (1998), overruled in part on other grounds by *In re Trejo*, 462 Mich 341, 353 n 10; 612 NW2d 407 (2000). In any event, the trial court properly terminated respondent-father's parental rights under MCL 712A.19b(3)(j) because there was a reasonable likelihood that TDC would be harmed if returned to his care.

Under MCL 712A.19b(3)(j), termination of parental rights is proper when "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." Harm under MCL 712A.19b(3)(j) includes emotional and physical harm. *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011). "[A] parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." *In re Smith*, 324 Mich App 28, 49; 919 NW2d 427 (2018) (quotation marks and citation omitted).

In this case, respondent-father pleaded no contest to the allegations in the petition. Respondent-father's initial PATP required that he find employment after release from incarceration, find independent housing after release from incarceration, participate in random drug screens, participate in an evaluation by a mental health professional to determine whether counseling services were needed, and participate in a mental health assessment. After the trial court obtained jurisdiction over the children, respondent-father was also required to improve his behavior and parenting skills.

At the termination hearing, the trial court was presented with significant evidence that respondent-father failed to comply with his PATP when he was not incarcerated, which is evidence that TDC would be harmed if returned to his care. *Smith*, 324 Mich App at 49. Respondent-father failed to attend counseling, failed to submit to a single drug test, failed to provide any negative drug screens, failed to attend substance abuse treatment, only attended five in-person parenting visits and several virtual visits out of 40 offered visits, failed to present proof of legal employment, and repeatedly refused to allow his caseworkers to perform a home check to determine whether he had suitable housing. Although respondent-father argues that he was not provided services while incarcerated, respondent-father was provided with multiple referrals for services when he was not incarcerated and failed to participate in any services or show any interest in visiting his children when he was not incarcerated from April 2021 through January 2022. Therefore, given the above facts, the trial court did not err by concluding that termination of respondent-father's parental rights was appropriate under MCL 712A.19b(3)(j).[3]

---

[3] Considering our conclusion that termination was appropriate under MCL 712A.19b(3)(j) for both respondent-mother and respondent-father, we need not address the additional statutory grounds because only one statutory ground for termination of parental rights must be proven. See *HRC*, 286 Mich App at 461.

## C. BEST-INTEREST DETERMINATION

Respondent-father also argues that the trial court erred by finding that it was in TDC's best interests to terminate his parental rights. We disagree.

We review for clear error a trial court's best-interest determination. *Sandborn*, 337 Mich App at 276. "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*. at 276 (quotation marks and citation omitted). "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). A trial court should focus on the child, not the parent, in determining the best interests of the child. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). In making this determination, a trial court may consider the parent's capacity to care for the child, MCL 722.23(b) and (c), "the child's bond to the parent, the parent's parenting ability, [and] the child's need for permanency, stability, and finality . . . ." *Olive/Metts*, 297 Mich App at 41-42 (citations omitted). In addition, the trial court may consider "a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption," *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014), and a parent's substance abuse problems, *In re AH*, 245 Mich App 77, 89; 627 NW2d 33 (2001).

The trial court did not err by concluding that it was in TDC's best interests to terminate respondent-father's parental rights. The record shows that the trial court permissibly considered respondent-father's bond with TDC; his moral fitness; his parenting ability, see *Olive/Metts*, 297 Mich App at 41-42; his capacity to care for TDC, see MCL 722.23(b) and (c); his substance abuse issues, see *AH*, 245 Mich App at 89; his history of domestic violence; his lack of compliance with his PATP; his failure to substantially engage in visitation with the children; TDC's need for permanency, stability, and finality; and the fact that the foster parents were willing to adopt TDC, see *White*, 303 Mich App at 714. The trial court appropriately found that all the above factors weighed in favor of finding that it was in TDC's best interests to terminate respondent-father's parental rights.

Notwithstanding the above, respondent-father argues that the trial court erred by finding that there were no reasonable alternatives to termination, such as a guardianship, and the trial court should have considered whether a guardianship was appropriate. But because a trial court may create a guardianship only if it finds that the children cannot be safely returned home and that termination is *not* in the children's best interests, a guardianship would have been inappropriate. See *In re Rippy*, 330 Mich App 350, 359-360; 948 NW2d 131 (2019); *In re TK*, 306 Mich App 698, 705; 859 NW2d 208 (2014). In addition, neither party advocated below for the creation of a juvenile guardianship, and there was no adult identified that could serve as a guardian for TDC. *Rippy*, 330 Mich App at 359.

## III. RESPONDENT-MOTHER (DOCKET NO. 361137)

Respondent-mother argues that the trial court erred by finding clear and convincing evidence to terminate her parental rights to the children, because the statutory grounds for termination under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), and (j) were not established. We disagree.

Respondent-mother pleaded no contest to the allegations in the petition. Respondent-mother's initial PATP required that she participate in inpatient substance abuse treatment, benefit from substance abuse treatment, remain in treatment until she was successfully discharged, sign a release of information, and participate in random drug screening. After the trial court obtained jurisdiction over the children, respondent-mother was also required to obtain suitable housing, obtain employment, improve her parenting skills, and improve her emotional stability.

The trial court did not clearly err by holding that there was a reasonable likelihood that the children would be harmed if returned to her care. There was a significant amount of evidence that respondent-mother failed to comply with her PATP, which is evidence that the children would be harmed if returned to her care. *Smith*, 324 Mich App at 49. Respondent-mother failed to improve her parenting skills even after she attended parenting courses, failed to participate in counseling to improve her mental health, failed to provide any negative drug tests throughout her entire case, failed to complete substance abuse treatment, failed to provide proof of legal employment, failed to obtain suitable housing, and failed to show any involvement in her children's lives over the three months before the termination proceedings other than attending virtual parenting visits. Moreover, at the time of termination respondent-mother had absconded from probation rather than submit to drug screening and substance abuse treatment. In addition, there was evidence that the children would be physically harmed if returned to her care because of her failure to rectify her substance abuse issues, given that she admitted to her caseworker that she still had a substance abuse issue during the same month as the termination hearing. See *Hudson*, 294 Mich App at 268. As a result, given the above circumstances, the trial court did not err by concluding that termination of respondent-mother's parental rights was appropriate under MCL 712A.19b(3)(j).

Affirmed.

/s/ Jane E. Markey
/s/ David H. Sawyer
/s/ Mark T. Boonstra