*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

WILLIAM GILLIAM,

Defendant-Appellant.

UNPUBLISHED
June 05, 2026
11:14 AM

No. 373138
Wayne Circuit Court
LC No. 21-002185-01-FH

Before: YOUNG, P.J., and BORRELLO and TREBILCOCK, JJ.

PER CURIAM.

Defendant, William Gilliam,[1] was convicted in a jury trial of seven counts of third-degree criminal sexual conduct, MCL 750.520(d)(1)(b) (force or coercion used to accomplish sexual penetration), and one count of domestic abuse, MCL 750.81(2). After sentencing, Gilliam filed a motion for new trial arguing his counsel was ineffective. The trial court denied that motion. Gilliam appeals and raises the same issue in this Court. We affirm.

## I. STATEMENT OF FACTS

Gilliam and CD met in late 2014 and were in a romantic relationship that ended in 2016. They remained friends afterward. On September 26, 2020, CD traveled to Gilliam's home and the two had a long conversation in a car parked outside of Gilliam's home. At around 4:00 a.m., Gilliam and CD went inside and began to kiss, but CD eventually asked that the two of them "cuddle and go to sleep." Instead, according to CD's testimony at trial, Gilliam repeatedly raped CD from 4:00 a.m. to 9:00 a.m., allowing her to leave only after she emphasized her need to go about her day. CD went to the hospital two days later, where she completed a sexual assault examination and rape kit from which multiple samples of DNA evidence were submitted for testing. CD also spoke to police from the hospital. Meanwhile, Gilliam repeatedly attempted to

---

[1] Gilliam's name is spelled with and without a second *i* throughout the lower court record; however, according to the request made at sentencing by defense counsel, the proper spelling is *Gilliam*, with a second *i*.

contact CD and made threatening remarks. Fearing for her safety, CD got a personal protection order against Gilliam. As a result of the incident, Gilliam was charged with multiple counts of third-degree criminal sexual conduct.

Before trial, the prosecution offered Gilliam a plea agreement that would limit his sentence to 5 to 15 years' incarceration. Gilliam declined this offer, entered a not guilty plea, and the parties continued to trial. On the second day of trial, trial counsel requested a break for water and to use the restroom. Upon her return, trial counsel told the trial court that she was "[n]ot well." The trial court asked whether it should declare a mistrial and start over because of trial counsel's condition. Both parties objected to the proposed mistrial. However, trial counsel was so concerned with her health condition that she instead asked the court to adjourn the trial until the next day to ensure that she was in "tip top shape" going forward. Trial counsel then confirmed to the trial court that she would not be able to perform well enough to continue. The trial court adjourned the proceedings until the next morning, at which point the proceedings continued uninterrupted.

Following the conclusion of the prosecutor's case, the trial court asked whether defense counsel had any witnesses. Trial counsel answered, "No, your Honor. My client is not going to . . . defense rests. He's not going to testify." Gilliam moved for a directed verdict, which the trial court denied. Gilliam was ultimately convicted by the jury of all counts.

At sentencing, Gilliam stated that CD lied at trial and his side was never heard because trial counsel had barred him from testifying on his own behalf. Gilliam also referenced text messages between himself and CD that he claimed would prove discrepancies in CD's testimony. Gilliam was sentenced to the mandatory minimum of 25 years' imprisonment.

Following sentencing, Gilliam moved for a new trial on the grounds that trial counsel's assistance was constitutionally ineffective during the plea-bargaining process and at trial. Gilliam's motion was denied. He then moved for reconsideration and provided new evidence, including affidavits from himself and his sister, as well as text messages between himself and CD. The trial court held a hearing on Gilliam's motion for reconsideration, and the motion was likewise denied. This appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Gilliam contends on appeal that the trial court erred in its denial of Gilliam's motion for a new trial based on ineffective assistance of counsel in the plea process and at trial. We disagree.

## A. STANDARD OF REVIEW

"Whether a defendant received ineffective assistance of trial counsel presents a mixed question of fact and constitutional law." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). "We review for clear error the trial court's factual findings, and [w]e review de novo questions of constitutional law." *People v Yeager*, 511 Mich 478, 487; 999 NW2d 490 (2023) (quotation marks and citation omitted; alteration in original). "Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *People v Davis*, 509 Mich 52, 68; 983 NW2d 325 (2022) (quotation marks and citation omitted). "When no *Ginther* hearing was held, this Court's review is limited to mistakes apparent from the record."

*People v Miller*, 326 Mich App 719, 726; 929 NW2d 821 (2019). Gilliam has requested that this Court remand for a *Ginther* hearing in the alternative to granting relief on appeal.

## B. ASSISTANCE BEFORE AND DURING TRIAL

The right of criminal defendants to the effective assistance of counsel is enshrined in both the Michigan and federal Constitutions. US Const, Am VI; Const 1963, art 1, § 20. "To constitute ineffective assistance, trial counsel's performance must have fallen below an objective standard of reasonableness, and there must be a reasonable probability that counsel's subpar performance affected the outcome of the proceedings, rendering the proceedings unfair or unreliable." *People v Blevins*, 314 Mich App 339, 351; 886 NW2d 456 (2016). However, when reviewing for ineffective assistance, defense counsel is entitled to a strong presumption of effective assistance. *People v LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002). The burden is accordingly upon the party who raises a claim of ineffective assistance of counsel to overcome that presumption. *Id*.

On appeal, Gilliam argues that trial counsel's performance was deficient because of her failure to provide information about the plea offer, failure to properly cross-examine the complaining witnesses, her illness, and her failure to reasonably investigate the facts of the case.

Turning first to advice related to Gilliam's pre-trial plea offer, the trial court noted that

> there's nothing that the Court can base that assertion on, . . . there's no affidavit, even from Mr. Gilliam, claiming that there was no . . . adequate explanation. And it seems that Mr. Gilliam tried to shift the burden to the People to show . . . that he rejected the plea offer, that he made that decision without there being anything on the record establishing that he understood what he was doing.

Upon examination of the trial court record, we find no clear error in the trial court's factual findings. Although we now have affidavits from Gilliam[2], they do not accuse counsel of failing to provide adequate advice related to the pre-trial plea offer and, more importantly, they also do not affirmatively state that Gilliam would have accepted the same.

Further, the trial record suggests that Gilliam was apprised of the details of the plea offer. During the discussion of the terms of the prosecution's plea offer at trial, trial counsel noted that she "had an opportunity to speak with [her] client in regards to the offer that the Prosecutor just placed on the record." Gilliam does not attempt to refute this claim. And while it is true that no

---

[2] On appeal, Gilliam suggests that it is unclear whether the trial court ever reviewed the new evidence provided. However, we note that, during the hearing on Gilliam's motion for reconsideration, the trial court expressly addressed the additional materials presented for the trial court's consideration: "I note that in the Motion for Reconsideration there are a number of additional materials that are presented for the Court's consideration and they are under Exhibits A, B, C, Exhibits A and B being part of Mr. Gilliam's affidavit—actually two different affidavits. And Exhibit C being an—it's an affidavit and copies of text messages that I'm assuming were between Mr. Gilliam and the victim in this case." The trial court ultimately concluded, "I don't see, and I haven't heard, an argument that I think is compelling . . . ."

attorney-client discussions were placed on the record that demonstrated trial counsel effectively informed Gilliam of the consequences of the plea agreement, it is likewise true that Gilliam's affidavit sheds no further light on the alleged shortcomings of counsel's advice around the plea offer.[3] The burden lies with Gilliam to establish the factual predicate of his ineffective assistance claim. *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014). Because there is no evidence in the trial record that trial counsel failed to properly inform Gilliam of the terms of the plea agreement, he cannot make such a showing. See *id.* Moreover, without evidence to prove that trial counsel provided ineffective assistance at the plea-bargaining stage, this Court cannot review whether trial counsel's advice prejudiced the outcome of the proceedings.[4] Accordingly, the trial court did not clearly err in its denial of Gilliam's motion for a new trial on the basis that trial counsel's advice to Gilliam regarding the prosecution's plea offer did not fall outside "the range of competence demanded of attorneys in criminal cases" and that her assistance did not cause Gilliam prejudice. *People v Fonville*, 291 Mich App 363, 385; 804 NW2d 878 (2011) (quotation marks and citation omitted).

Next, the trial court concluded at the motion hearing that trial counsel's cross-examination was not constitutionally ineffective. In relevant part, the trial court reasoned that,

> [w]ith respect to ineffective cross-examination I find that that—that assertion really lacks merit at all. There was significant cross-examination of the complaining witness . . . .

> * * *

> The claim of ineffective cross, additionally seems to just be a blanket claim, it does not indicate what the defense counsel missed or what the defense counsel should have been able to bring out in cross-examination that she did not bring out.

> * * *

> That being said, it appears to the Court that the defense counsel raised a number of issues that were pretty important and—pretty important for the defense,

---

[3] Gilliam notes in his brief that the trial court never asked "questions to ascertain Gilliam's free, voluntary, and intelligent decision to reject the plea offer and go to trial." The standard referenced by Gilliam governs the duties of the trial court when a defendant seeks to accept a plea offer: "[A] trial court may not accept a plea of guilty unless it is convinced that the plea is understanding, voluntary, and accurate." *People v Thew*, 201 Mich App 78, 82; 506 NW2d 547 (1993), citing MCR 6.302. However, upon examination of the plain language of the relevant Michigan Court Rule, MCR 6.302, this disclaimer is only explicitly required when a defendant accepts the terms of a plea agreement and not when a defendant rejects a plea offer.

[4] As a brief aside, this Court hesitates to agree that Gilliam would have accepted the plea offer even in the event that Gilliam was properly briefed on the terms of the agreement. Gilliam maintained his innocence even at sentencing, which leads us to conclude that Gilliam would not have agreed to a plea offer that required an admission of guilt.

not the least, of which is challenging the credibility of the complaining witness on a number of points like why she wore her pajamas to go and visit Mr. Gilliam, like why her testimony at the preliminary examination was different than her testimony during trial, and a number of other issues that I think defense counsel engaged in pretty sound strategy in addressing, and all of those were to undermine the complaining witnesses credibility.

We find here no clear error in the trial court's findings of fact. The transcripts support the trial court's recollection that trial counsel raised doubt about the credibility of the witnesses against Gilliam at trial. During trial counsel's cross examination of CD, CD admitted that her police report was written in part by someone else, and that the report had been changed multiple times by an officer. Trial counsel also repeatedly noted discrepancies between information written in reports and statements made by those witnesses at trial. Trial counsel attempted to cast doubt on the lab results when she engaged in a line of questioning to suggest that Gilliam's DNA could have been transferred via skin or sweat onto CD. And finally, although her line of questioning was ultimately objected to, trial counsel did attempt to question the thoroughness and completeness of the investigating officer's reports during her cross-examination of Officer Jones. These examples illustrate attempts by trial counsel to call into question the credibility of the prosecution's witnesses on cross-examination.

To support his claim that trial counsel's cross-examination of CD was constitutionally ineffective, Gilliam provided text messages that he had supplied to his counsel. However, we are not persuaded that this additional evidence would have affected the outcome of the proceedings. Even if these text messages were taken at face value as authentic, unadulterated, and complete, Gilliam does not explain how the messages undermine CD's testimony.[5] See *People v Bowling*, 299 Mich App 552, 559-560; 830 NW2d 800 (2013) (stating that an appellant may not simply "announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments").

Ultimately, despite trial counsel's efforts, the jury was not persuaded to disbelieve the witnesses. However, as was noted by the trial court at the motion hearing:

> [w]hether the jury agreed, though, is not what the Court needs to base its decision on. The Court basis [sic] its decision only on an objective standard of whether the defense counsel met it's [sic]—met her responsibility with respect to representation at trial. And I'm finding that the cross-examination was not ineffective, however, it was unsuccessful.

This Court has previously held that "[w]e will not second-guess matters of strategy or use the benefit of hindsight when assessing counsel's competence." *People v Odom*, 276 Mich App 407,

---

[5] In our reading, the content of the text messages may have instead bolstered CD's credibility. CD testified at trial, consistent with the content of the text messages, that she regularly communicated with Gilliam through phone calls and text messages. CD did not testify that Gilliam invited her over but rather she "ma[d]e her way there that night . . . around midnight."

415; 740 NW2d 557 (2007). Thus, although trial counsel's cross-examination of the prosecution's witnesses was ultimately unsuccessful, this does not render her counsel constitutionally ineffective.

Turning next to the issue of trial counsel's illness at the time of trial, trial counsel's health issues did not lead her performance to fall below an objective standard of reasonableness or affect the outcome of the proceedings. At the hearing on Gilliam's motion for a new trial, the trial court stated, in relevant part, that

> [I]t's no doubt that the defense counsel was, as I said earlier, seriously ill, I don't know what the—what the—I'm sorry, the physical health challenges were but they were significantly [sic] enough as defendant pointed out that the trial judge suggested that there—that he call a mistrial and that the—that the trial be rescheduled. The defense counsel, umm, declined that offer, and it was adjourned, and when she came back to finish the trial it seems that none of her health considerations from earlier in the trial were still present and she was able to complete the trial, and there's nothing on the record that indicated that she was still, what seemed to be, gravely ill as she was at the beginning of the trial. Though, again, I'm not certain what it is that—umm, other than the fact that the trial was disrupted I'm not certain what it is that the defense counsel – the defense counsel's health—I'm not certain how defense counsel's poor health would have, if it had been different, would have created a different outcome from the jury and—by the jury, I should say, and I'm pretty certain that the jury did not even realize that defense counsel was ill.

*   *   *

> [F]or the same reason as the Court's finding that there was no ineffective cross-examination, the Court finds that there was—that the defense counsel's illness did not prejudice Mr. Gilliam, as the cross-examination did not prejudice Mr. Gilliam, to the extent that the outcome, it could be said, would have been different in this case.

Although trial counsel asked the trial court to pause proceedings so that she could take brief restroom breaks on all three days of trial, only one of these breaks directly attributed to her ongoing condition. Nor was trial counsel's performance as counsel below an objective standard of reasonableness in making requests for short breaks during trial for such purposes. Drinking water and using the restroom are normal bodily activities, and it would be unreasonable to require counsel to abstain from either.

Trial counsel's sickness was serious enough to require adjournment of the trial. However, there is no evidence in the trial record to support that trial counsel's condition affected the outcome of the proceedings. And although trial counsel did decline to pursue a mistrial at the time of the adjournment, there is no evidence in the trial court record that this decision prejudiced Gilliam or otherwise affected the proceedings. The trial resumed the next day without further issue and continued uninterrupted through the end of the trial, with trial counsel making no further mention of her health issues in the trial record. Moreover, the jury was not even made aware who was

-6-

responsible for the delay, as the trial court merely stated that a serious health issue had arisen for "someone necessary for the trial of this case." Gilliam was not prejudiced by the adjournment to the extent that it affected the proceedings, as the jury was unaware that it was the defense who were responsible for the delay. Therefore, trial counsel's illness at trial therefore did not impact her ability to provide constitutionally effective counsel.

Fourth, we do not believe that the trial court clearly erred in finding that trial counsel's investigation of the factual background of this matter was adequate. At the hearing on Gilliam's motion for a new trial, the trial court concluded, in part, that

> with respect to the investigation . . . the allegation of deficient investigation lacks any pointing to what was missed. So if there's an assertion that the investigation was ineffective or fell below an objective standard of professionalism and reasonableness the Court would need to know what was missed during the investigation. I thought that I would see an affidavit, perhaps, from the—from Mr. Gilliam's physician, or surgeon, whoever is the main medical professional over his case—over his case as a patient. I didn't see any affidavit from a doctor indicating that he would not have been during the—on the offense date that he would not have been in physical health to complete the crime but there was not, and there was no affidavit even from Mr. Gilliam, that he was not in insufficient [sic] health to have been able to commit the crime such that the Court could determine that that would have been a very good avenue of strategy to use the—to use the affidavits stating that there was no—no ability of Mr. Gilliam to commit the crime, but we don't have those affidavits.

Gilliam's subsequent motion for reconsideration did not include the requisite offer of proof as to his heart condition. Gilliam did include an affidavit in which he detailed his version of the events of that evening, but that affidavit does not state that he was physically precluded or somehow incapable of committing the acts of which he had been accused. Gilliam also includes an affidavit from his sister in which she declares that, on the night in question, she did not receive any notifications that Gilliam's heart rate was "dangerously elevated." But this affidavit, too, falls short. There is nothing offered to show that the factual circumstances alleged by CD would *cause* Gilliam to have dangerously elevated heart rate. Further, that the data being transmitted from Gilliam's implant did not warrant a call to an emergency contact does not foreclose the possibility that the data transmitted would nonetheless disclose instances of elevated heartrate short of "overactivity"; such data would hurt, rather than help, Gilliam.

This evidence does not persuade us that the trial court clearly erred in finding that trial counsel's investigation into the factual background of the case was adequate. As previously stated, we will not second-guess matters of strategy, and decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy. *People v Muhammad*, 326 Mich App 40, 65; 931 NW2d 20 (2018) (quotation marks and citation omitted).

CONCLUSION

We find Gilliam's issues raised as to the adequacy of his trial counsel unavailing.  We affirm.

/s/ Adrienne N. Young
/s/ Stephen L. Borrello
/s/ Christopher M. Trebilcock